## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| KEISHA A. RIVERS, | ) | Civil Action No.: |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **Violation of Title VII:** |
| vs. | ) | **Sexual Harassment** |
| | ) | |
| LOWE'S COMPANIES, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff above named, complaining of the acts of the above-named defendant, states as follows:

### PARTIES AND JURISDICTION

1.     That the plaintiff is a resident and citizen of the County of Dorchester, State of South Carolina.

2.     That, upon information and belief, the defendant Lowe's Companies, Inc. ("Lowe's" or "defendant") is a foreign corporation doing business and maintaining offices and agents in the County of Charleston, State of South Carolina.

3.     That this court has federal question jurisdiction pursuant to 42 U.S.C. §2000e-2, 42 U.S.C. §2000e-3, 42 U.S.C. §2000e-5 ("Title VII") and 28 U.S.C. §1331.

4.     That venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division, in that pursuant to 28 U.S.C. § 1391(b), the defendant resides and does business in this district, and a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## CONDITIONS PRECEDENT

5.      That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below. Moreover, defendant employed fifteen (15) or more employees at all relevant times as defined by Title VII and, as such, defendant is an "employer" under Title VII and otherwise subject to said Act.

6.      That on or about June 23, 2016, and as result of defendant's discriminatory conduct, all of which is more fully described below, plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against defendant alleging discrimination based upon gender (or sex) and retaliation.

7.      That on or about September 21, 2017, plaintiff received her Dismissal and Notice of Rights [to sue] from the EEOC regarding the complaint described above in paragraph 6.

8.      That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received her Dismissal and Notice of Rights described above in Paragraph 7.

## FACTS

9.      That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 8 hereinabove as fully as if set forth verbatim.

10.     That plaintiff is a female.

11.     That defendant hired plaintiff on or about December 17, 2015 to work as a Cash Office Clerk in its Mt. Pleasant, South Carolina store.

12.    That in this position, plaintiff reported to Jeanne Pilliteri ("Pilliteri"), the Administrative Department Manager.  Pilliteri, in turn, reported to Maybell Heyward ("Heyward"), an Assistant Store Manager over the administrative or front end area.  And, Heyward reported to Clint Wiener ("Wiener"), the Store Manager.

13.    That otherwise, plaintiff performed her job duties at defendant in an above-satisfactory fashion and maintained an excellent employment record there.  To this end, while plaintiff never received a formal performance evaluation at defendant, her supervisors praised her job performance, and plaintiff was never disciplined the entire time she worked there.

14.    That despite the above, beginning in or around early March of 2016, the Head Cashier, James Conant a/k/a Van ("Conant"), began to sexually harass plaintiff.  This harassment, which occurred on a daily basis, included but was not limited to the following conduct:

   A.    In or around the beginning of March, 2016, plaintiff changed her hair color from black to red.  When Conant saw plaintiff's hair, he began to call plaintiff "red" and he continually asked her what her husband thought about her red hair color.  When plaintiff replied that it was her husband who chose the hair color, Conant remarked that plaintiff's husband must have a sexual fantasy about redheads.  Conant further urged plaintiff to ask her husband why he chose red - again remarking that her husband chose red because he had a sexual fantasy about redheads;

   B.    Approximately one week later, plaintiff was in the Cash Office (a small room with a door) with Conant and David Gates ("Gates"), the Customer Service Manager and Conant's direct supervisor.  On this occasion Conant again began to make sexual remarks to plaintiff about her red hair, but this time he made the comments in front of his own supervisor.  To this end, Conant asked plaintiff what made her decide to change her hair color to red.  When plaintiff told him again that her husband chose the color, Conant turned directly to Gates and stated words to the effect of, "Yeah, I told her [her husband] has a sexual fantasy about redheads and that's why [her husband] picked that color."    Instead of

3

admonishing Conant for using inappropriate sexual language, Gates laughed and then he and Conant left the room together;

C.      For approximately two weeks, on a daily basis, Conant would make sexual remarks to plaintiff about her hair color.  He would make these remarks to plaintiff in front of supervisors like Gates and other employees, such as Dana Yates ("Yates"), a coworker of plaintiff;

D.      At the same time, Conant would tell Yates that he thought plaintiff was "sexy" and that he loved women with red hair.  Yates, in turn, relayed this information to plaintiff;

E.      Sometime between on or about May 15 to on or about June 5, 2016, Conant leaned over and tried to kiss plaintiff when the two were alone together in the Cash Office.  Of course, plaintiff objected and told him not to do it;

F.      Sometime between on or about May 15 to on or about June 25, 2016, plaintiff was in the Cash Office with Conant, Yates and Pilliteri with the door closed.  When plaintiff attempted to leave the office, Conant intentionally blocked the door in a flirtatious manner so that plaintiff could not leave.  Plaintiff told Conant in strong terms that she had to leave so that she could call her husband, but Conant still would not move.  As such, plaintiff was forced to push Conant out of the way in order to leave the office.  In the process, Conant remarked how strong he was and made other inappropriate remarks or sounds.  For her part, Pilliteri, a Department Manager, said nothing.  She did not admonish or discipline Conant in any way for inappropriate behavior;

G.      On or about June 16, 2016, plaintiff returned to work after being out for a week.  At some point that day plaintiff remarked to Conant that it was hard to get going after being gone for a week.  Conant responded by saying, "Oh, I'll get you going alright" and then made kissing gestures towards plaintiff in front of the cashiers;

H.      On or about June 19, 2016, when plaintiff was in the Cash Office, Conant walked in to get his keys for the day.  In doing so, he stood inappropriately close to plaintiff and stared at her chest;

I.      On or about that same day (June 19, 2016) Conant remarked to plaintiff that the store probably would not be busy that particular day since it was Father's Day.  When plaintiff stated that she forgot it was Father's Day, Conant walked over to plaintiff, grabbed her ear with his fingers, pretended like he was looking inside her ear and stated, "I just want to make sure something was in there;"

4

J.   Still that same day (on or about June 19, 2016) while plaintiff was in the Cash Office with a female coworker, Conant (who was standing outside the office) told the female coworker that he wanted to watch the said female coworker defecate in the restroom.  Of course, plaintiff heard the remark and was disgusted by it;

K.   Sometime in or around May of 2016, Conant told plaintiff that she needed to get her hair done again, because the red coloring was fading;

L.   In or around early June of 2016, Conant glared at plaintiff in a hostile (and jealous) manner while plaintiff was talking to a male Assistant Manager named James;

M.   In or around the week of June 6, 2016, plaintiff was in the Cash Office with one of her supervisors, Heyward. Conant entered the office and told Heyward that he called plaintiff "red."  He then told Heyward that Heyward should color her own hair red;

N.   At some point Conant advised plaintiff that he was going to be out of work for two weeks to have surgery and that he would not have anything to do while he was out.  When plaintiff suggested to Conant that he could spend time with his wife, Conant stated that he did not want to be home with his wife and that his wife was a "fucking bitch;"

O.   Conant would blow kisses at plaintiff in the front of the store;

P.   On one occasion plaintiff told Conant that she needed to sit down. Conant responded by telling plaintiff, in a sexually suggestive manner, that "I can tell you where you can sit."  When plaintiff told Conant he could not talk to her that way, Conant told plaintiff that her "mind was going there, not his."  Indeed, Conant always turned his conversations with plaintiff in a sexual direction;

Q.   On another occasion, when plaintiff and Conant were alone in the Cash Office and plaintiff was standing working on the computer, Conant leaned in close to her face and made kissing gestures. When plaintiff confronted Conant about this behavior, Conant said he was "just playing;"

R.   Conant constantly stared at plaintiff in a sexually suggestive manner, staring directly at her chest and staring at her from head to toe;

S.   On at least two (2) occasions, Conant walked up to plaintiff and toucher her on her back;

5

T.    Conant told plaintiff that when he went on vacation for two weeks, he did not have sex with his wife because his mother-in-law was with them; and

U.    He repeatedly called plaintiff "sweetheart" and "red."

15.    That on or about June 20-21, 2016, plaintiff called in sick due to the harassment. Prior to this, the only time plaintiff missed work was to attend her father's funeral.

16.    That on or about June 22, 2016, plaintiff applied for a personal leave of absence from work, all due to medical issues caused by the above-described sexual harassment.

17.    That on or about June 23, 2016, defendant denied plaintiff's request for personal leave for "administrative" reasons. Specifically, plaintiff was advised that the Cash Office only had two (2) employees, and, thus, plaintiff could not be absent for an extended period of time.

18.    That also, on or about June 23, 2016, plaintiff filed a complaint against defendant with the EEOC.

19.    That after work on or about June 28, 2016, plaintiff went to the doctor to be treated for stress and anxiety related to the sexual harassment. At the doctor's visit, plaintiff was given a prescription for anti-anxiety medication and her physician wrote her a work excuse keeping her out of work from June 28 to July 3, 2016. Also on or about June 28, 2016, plaintiff sent a letter to the Human Resources Manager at defendant, advising that her previous leave of absence had been denied wrongfully; that she was resubmitting a request for personal leave; and that the reason for the request was due to health issues related to sexual harassment at defendant.

20.    That the next day, on or about June 29, 2016, plaintiff went to work to open up and to deliver her doctor's note to management. That morning, while plaintiff was alone in

the Cash Office, Conant walked in, told plaintiff he needed to fix himself, and then unbuckled his belt and opened up his pants in front of plaintiff.

21.    That throughout that morning, Conant also repeatedly called plaintiff "sweetheart" as he walked in and out of the Cash Office.  The fact that this harassment was taking place in a small, enclosed office where plaintiff felt trapped made the harassment particularly frightening to plaintiff.  At this point, plaintiff had had enough.  On the verge of a nervous breakdown, plaintiff left work and has not returned.

22.    That later that day, plaintiff had lunch with one of her prior supervisors, Pilliteri.  During the lunch, plaintiff told Pilliteri that she (plaintiff) was uncomfortable at work because of Conant and that Conant's comments and behavior were causing her a great deal of stress.  In response, Pilliteri acknowledged that Conant had a tendency to make sexual or inappropriate remarks in the workplace.

23.    That thereafter, plaintiff's emotional health deteriorated due to the above sexual/gender harassment.  Plaintiff filed for short-term and long-term disability.

24.    That on or about September 1, 2017, defendant terminated plaintiff, alleging that plaintiff's leave of absence extension had come to an end.

**FOR A FIRST CAUSE OF ACTION:**
**VIOLATION OF TITLE VII**
**SEXUAL HARASSMENT/HOSTILE ENVIRONMENT**

25.    That the plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 24 hereinabove as fully as if set forth verbatim.

26.    That at all pertinent times, defendant employed fifteen (15) or more employees and, as such, defendant is an "employer" as defined by Title VII, and otherwise subject to the said Act.

27.    That defendant's conduct as described above was offensive and unwelcome, and plaintiff so advised defendant.

28.    That said harassment described above was based on plaintiff's sex/gender.

29.    That defendant's behavior humiliated plaintiff, unreasonably interfered with her work performance, affected the terms, conditions and privileges of her employment, and otherwise caused plaintiff severe psychological and physical harm.

30.    That defendant's actions as alleged above created a work environment that plaintiff found, and a reasonable person would find, hostile and abusive.

31.    That on numerous occasions plaintiff complained about the above-described sexual harassment to defendant and defendant was otherwise on notice that the harassment was occurring, as it occurred openly and on a widespread basis at the defendant, in front of management employees.

32.    That defendant wholly failed to take prompt and effective remedial action to end the harassment, and defendant continued to sexually harass the plaintiff, despite plaintiff's repeated complaints and despite defendant's knowledge of the harassment.

33.    That the actions of defendant in engaging in offensive verbal conduct, unwanted sexual propositions and conversations, and unwanted touching, constitute discrimination against plaintiff in violation of Title VII and the Civil Rights Act of 1991.

34.    That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation,

loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

35.    That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendant.

**FOR A SECOND CAUSE OF ACTION:**
**VIOLATION OF TITLE VII**
**RETALIATION**

36.    That the plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 35 hereinabove as fully as if set forth verbatim.

37.    That at all pertinent times, defendant employed fifteen (15) or more employees and, as such, defendant is an "employer" as defined by Title VII, and otherwise subject to the said Act.

38.    That as alleged above, plaintiff complained to the defendant on several occasions that she was being sexually harassed and discriminated against because of her sex (or gender).  Moreover, plaintiff filed a Charge of Discrimination against defendant with the EEOC while plaintiff still worked at defendant.

39.    That plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

40.    That after making the said complaints, defendant terminated plaintiff.

41.    That defendant terminated plaintiff for making complaints of sexual harassment and  discrimination internally to defendant and to the EEOC and for opposing discrimination based upon sex, all of which is in violation of 42 U.S.C. § 2000e-3.

42.     That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

43.     That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendant.

WHEREFORE, as to all causes of action, plaintiff prays for the following relief against defendant: for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorney's fees, prejudgment interest and for such other and further relief as the court deems just and proper.

HITCHCOCK & POTTS

By:  s/A. Christopher Potts
Federal ID No.:  5517
31 Broad Street (P.O. Box 1113)
Charleston, SC 29401 (29402)
Telephone:  (843) 577-5000
E-Mail:  hitchp@bellsouth.net
**Attorneys for the Plaintiff**

Charleston, South Carolina
December 6, 2017

10